IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————————————

|  |  |  |
|---|---|---|
| JAMES L. CARPENTER, | : | CIVIL ACTION |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 10-0734 |
|  | : |  |
| SHU-BEE'S, INC. and STEVE STONE | : |  |
| ENTERPRISES, INC., | : |  |
| Defendants. | : |  |
|  | : |  |

—————————————————————————————

Henry S. Perkin, M.J.                                                                                  July   5th   , 2012

**MEMORANDUM**

Presently before the Court is the Motion for Summary Judgment filed by the

Defendants, Shu-Bee's, Inc. and Steve Stone Enterprises, Inc.[1] ("Shu-Bee's")(Dkt. No. 54),

Plaintiff's Response to the Motion (Dkt. No. 71) filed on March 2, 2012; Plaintiff's Motion to

Strike the Motion for Summary Judgment (Dkt. No. 70) filed on March 2, 2012, and the

Defendants' Opposition to the Motion to Strike (Dkt. No. 73) filed on March 12, 2012.  For the

reasons that follow, the Motion for Summary Judgment will be granted and Plaintiff's Motion to

Strike will be denied.

**I.      PROCEDURAL HISTORY.**

On February 19, 2010, Defendants Shu-Bee's, Inc. ("Shu-Bee's") and Steve Stone

Enterprises, Inc. ("Steve Stone"), removed this case from the Court of Common Pleas of

Philadelphia County.  The case was assigned to the docket of the Honorable Lawrence F.

---

[1]        At the time of filing the instant Motion for Summary Judgment, Defendant Steve Stone
Enterprises, Inc. was a named defendant in this case.  On March 12, 2012, the parties executed a Stipulation
dismissing Steve Stone Enterprises, Inc. from this case with prejudice.  See Dkt. No. 74.  Accordingly, this
Memorandum will discuss the instant Motion only as it pertains to Plaintiff's claims against Defendant Shu-Bee's,
Inc.

Stengel.  On March 7, 2010, Plaintiff filed an Amended Complaint with the following claims:

Strict Liability against Shu-Bee's (Count I); Negligence against Shu-Bee's (Count II); Breach of

Warranty against Shu-Bee's (Count III); Strict Liability against Steve Stone (Count IV);

Negligence against Steve Stone (Count V); Breach of Warranty against Steve Stone (Count VI);

Violation of Pennsylvania Unfair Trade and Practices and Consumer Protection Law against all

Defendants (Count VII); and Intentional, Reckless or Negligent Representation against all

Defendants (Count VIII).  On January 4, 2011, Judge Stengel signed the consent and order

referring this case to the undersigned to conduct all proceedings and order the entry of judgment

in accordance with 28 U.S.C. section 636(c) and Federal Rule of Civil Procedure 73.

Defendants filed a Third-Party Complaint against Crown Name United Co., Ltd.

on March 2, 2010.  See Dkt. No. 5.  On March 3, 2011, Defendants filed a Notice of Voluntary

Dismissal of Crown Name United Co., Ltd.  See Dkt. No. 21.  On February 10, the instant

Motion for Summary Judgment was filed by the Defendants, Shu-Bee's, Inc. and Steve Stone

Enterprises, Inc.  On March 2, 2012, Plaintiff filed both the Response to the Motion and his

Motion to Strike the Motion for Summary Judgment.  On March 12, 2012, Defendants'

Opposition to the Motion to Strike was filed and also on March 12, 2012, the parties stipulated

that Steve Stone Enterprises, Inc. should be dismissed from this case with prejudice.  See Dkt.

No. 74.  Defendant Shu-Bee's moves for summary judgment of Count VII of the Complaint

under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") on

the basis that the shoe covers were not used primarily for personal, family or household purposes

and because Shu-Bee's contends that it has made no misrepresentation regarding the shoe covers.

For the reasons that follow, Shu-Bee's Motion will be granted and Plaintiff's Motion to Strike

the Motion for Summary Judgment will be denied.

III.     **STANDARD OF REVIEW.**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary

judgment is proper "if there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The essential inquiry is "whether

the evidence presents a sufficient disagreement to require submission to the jury or whether it is

so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 251-252 (1986).  The moving party has the initial burden of informing the court of

the basis for the motion and identifying those portions of the record that demonstrate the absence

of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue

is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for

the non-moving party.  Anderson, 477 U.S. at 249.  A factual dispute is material only if it might

affect the outcome of the suit under governing law.  Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings,

but rather that party must go beyond the pleadings and present "specific facts showing that there

is a genuine issue for trial." FED. R. CIV. P. 56(e).  Similarly, the non-moving party cannot rely

on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a

summary judgment motion.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir.

1989)(citing Celotex, 477 U.S. at 325).  The non-moving party has the burden of producing

evidence to establish *prima facie* each element of its claim.  Celotex, 477 U.S. at 322-323.  If the

court, in viewing all reasonable inferences in favor of the non-moving party, determines that

there is no genuine issue of material fact, then summary judgment is proper.  Id. at 322;

Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).  When the non-moving

party will bear the burden of proof at trial, the moving party's burden can be "discharged by

'showing' - that is, pointing out to the District Court - that there is an absence of evidence to

support the non-moving party's case."  Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642

(W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

## IV.   DISCUSSION.

The UTPCPL permits "[a]ny person who purchases or leases goods or services

primarily for personal, family or household purposes and thereby suffers any ascertainable loss of

money or property, real or personal, as a result of the use or employment by any person of a

method, act or practice declared unlawful by section 3 of this act [§ 201-3],. . ." to file a private

action.  73 Pa. C.S. § 201-9.2.  The UTPCPL does not define "purchaser" or "household

purpose."  Duffy v. Lawyer's Title Ins. Co., 21012 U.S. Dist. LEXIS 23674, *8 (E.D. Pa. Feb.

23, 2012)(citing In re Barker, 251 B.R. 250, 261-62 (Bankr. E.D. Pa. 2000)(loan broker violated

UTPCPL by failing to disclose detrimental effect of refinancing loan)).  Courts have generally

taken a broad approach to what constitutes a sale or a purchaser under the act.  Id. (citing

Christopher v. First Mut. Corp., 2008 U.S. Dist. LEXIS 32781 (E.D. Pa. Apr. 21, 2008)).

However, whether a purchase is used primarily for household purposes and a cause of action

under the UTPCPL is available depends on the purpose of the purchase, not the type of product

purchased.  Novinger Grp., Inc. v. Hartford Ins., Inc., 514 F. Supp.2d 662 (M.D. Pa. 2007).

### A.   Plaintiff's Motion to Strike the  Motion for Summary Judgment.

Plaintiff moves to strike the Motion for Summary Judgment on the basis that

Defendant failed to comply with this Court's directive regarding a separate, short and concise

statement of the material facts found in this Court's Scheduling Orders.  The Scheduling Orders

state the following:

> Upon any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, there shall be filed with the motion a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> .  .  .  .
>
> Statements of material facts in support of or in opposition to a motion shall include references to the parts of the record that support the statements.
> All material facts set forth in the statement required to be served by the moving party may be taken by the Court as admitted unless controverted by the opposing party.

See Dkt. No. 24.  Defendant denies that it failed to comply with the Scheduling Order, and

responds that its separate, short, concise statement of the material facts can be found in numbered

paragraphs one through four of the Motion, of which paragraphs one, three and four were

admitted by Plaintiff.  We are satisfied, based upon a review of the Motion for Summary

Judgment, that Defendant is in compliance with the directive regarding a short, concise statement

of material facts.  Accordingly, Plaintiff's Motion to Strike the Motion for Summary Judgment

will be denied.

> **B.    Whether Shu-Bee's Advertising Materials Contained Numerous Misrepresentations Sufficient to Establish Claims Under Multiple Provisions of the UTPCPL.**

Shu-Bee's moves for summary judgment on the basis that the language in its

advertising materials describing the material which comprises the shoe covers and stating that the

shoe covers are "made from slip-resistant textured plastic" is not a misrepresentation and is not

made falsely under a Pennsylvania fraud analysis because the shoe covers are made from a

textured plastic material which is more slip resistant than the same material with a non-textured

surface.  Mot., p. 8.  Shu-Bee's distinguishes its "made from slip-resistant textured plastic"

advertising from Plaintiff's characterization of the advertisement as "slip resistant."  Id.

Plaintiff responds that Shu-Bee's argument misstates Pennsylvania's partial

incorporation of common law fraud elements with claims under the UTPCPL, and Pennsylvania

has incorporated all common law fraud elements to only a limited number of subsections of the

UTPCPL.  Plaintiff contends that his claim qualifies under at least three separate provisions of

the UTPCPL, only one of which requires proof all elements of common law fraud.  Plaintiff

specifically contends that his claim qualifies under 73 Pa. C.S. § 201-2(4)(v)(prohibits

"[r]epresenting that goods or services have . . . characteristics . . . [or] benefit[s] [] that they do

not have"); § 201-2(4)(vii)(prohibits "representing that goods or services are of a particular

standard, quality or grade, or that goods are of a particular style or model, if they are another");

and § 201-2(4)(xxi)("catchall" fraud provision).  Plaintiff notes that only under the UTPCPL's

catchall provision must he prove all elements of common law fraud.  According to Plaintiff, even

if he could not prove a "misrepresentation" "made falsely" under Pennsylvania law, summary

judgment would be improper because his UTPCPL claim also falls under 73 Pa. C.S. §

201-2(4)(v) and (vii), provisions which do not have these requirements.

Plaintiff also argues that "[t]he misleading and deceptive assertions made by

Shu-Bee's are not limited to the wording 'made from slip-resistant textured plastic'" cited by

Shu-Bee's.  Pl.'s Mem. Law, p. 9 (citing Mem. Law Ex. A, Excerpt from Shu-Bee's Catalog at 3;

Ex. B, 1/27/12 Excerpt from Shu-Bee's Website at 3 under "Product Description.")  According

to Plaintiff, Defendant's allegedly misleading and deceptive assertions also include the statement

"ShuBee's Shoe Covers not only protect your customers' carpets and floors, but our models provide great protection against sliding on slippery surfaces such as tile and linoleum." Id. (citing Mem. Law Ex. A at 2.) According to Plaintiff, "this language describes specific slip risk protection on slippery surfaces and is included at the beginning of the catalog section that sells all shoe covers and so may be reasonably read to apply to all shoe covers." Id. Plaintiff also notes that Shu-Bee's pre-Complaint website included similar language, even when the shoe cover options are restricted to "Waterproof ShuBees" by selecting the "Waterproof ShuBees" option from the left-hand menu. Id. (citing Ex. B, p. 1 (under "Waterproof Shoe Covers" ("ShuBee's Original Shoe Covers not only protect your customers' carpets and floors, but our models provide great protection against sliding on slippery surfaces such as tile and linoleum. Our booties are made from a breathable polypropylene material with anti-skid bottoms and are perfect for those who work in construction, plumbing, heating and air, pest control, daycare, real estate and other industries."))). Plaintiff contends that these statements are "misrepresentations" made falsely by Shu-Bee's because they are not based on any empirical testing and were continued after Shu-Bee's received complaints about the slipperiness of its shoe covers. Id. at 8 (citing Ex. E, Chambley Dep., pp. 52, 59-61). Plaintiff argues that Shu-Bee's claims are deceptive because they imply a safety feature that the shoe covers do not have and a slip-resistance relative to other shoe covers that does not exist. Id. at 8-9.

Plaintiff also points to changes to two pages of Shu-Bee's website: (1) the product specific page now reads, "ShuBee's Waterproof Shoe Covers are made from a textured, plastic material perfect keeping the wet mess off floors and out of the house. [sic]"; and (2) the general page of "Waterproof ShuBees" no longer has any description at the top banner. Id. at 10 (citing

Ex. C, 2/29/12 Excerpts from Shu-Bee's Website).  According to Plaintiff, "[i]t is hard to imagine why the language was very recently changed if there was nothing deceptive in the language that existed before Mr. Carpenter became injured."  Id.

Given the three provisions of the UTPCPL which Plaintiff contends apply to its claims against Shu-bee's for misrepresentation, it appears that summary judgment is inappropriate as to Count VII.  However, Shu-Bee's also moves for summary judgment of Plaintiff's claims in Count VII on the basis that the shoe covers were not purchased by Plaintiff's employer to be used "primarily for personal, family or household purposes" under the UTPCPL, and we next examine that argument.

C.      **Whether the Shoe Covers Were Used Primarily for Personal, Family or Household Purposes.**

Defendant notes that Mike Essig, an owner of Essig Plumbing, Plaintiff's employer, testified at deposition that Essig Plumbing started using the shoe covers as a business practice "[b]ecause the service industry was asking us saying that the customers out there wanted us to respect their homes more."  Mot., Ex. E, p. 29.  Essig Plumbing required its employees to wear the subject shoe covers in customer homes until they could place a drop cloth in the affected areas.  Id. at 30-31.  Shu-Bee's contends that Mike Essig's testimony indicates that the shoe covers were being used in furtherance of a commercial purpose at the time that Plaintiff was injured, therefore they were not being used "primarily for personal, family or household purposes" under the UTPCPL.  Shu-Bee's relies on Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238 (3d Cir. 2002), in which the Third Circuit held that a purchase of pedicle screws by an orthopedic surgeon for use in his surgical practice was not for personal, family or

household use and the surgeon therefore lacked standing to file suit against the screw

manufacturers under the UTPCPL even if he purchased the screws for his patients' personal use.

In Balderston, the Third Circuit affirmed a district court's dismissal of a claimed violation of the

UTPCPL where a surgeon claimed false advertising of surgical screws because the medical

devices caused him pecuniary loss.  Id. at 239.  The products there were medical devices

implanted in the body for medical reasons.  Id.  The Third Circuit held that purchase of screws

for personal use by the surgeon's patients did not bring the surgeon within the ambit of the

UTPCPL because it "uncovered no Pennsylvania decision finding actionable a non-representative

plaintiff's claim based on others' 'personal uses.'"  Id. at 242.

Plaintiff disputes that the shoe covers were not purchased primarily for personal,

family or household purposes as set forth in the UTPCPL because Mr. Essig testified that the

shoe covers were purchased for the specific purpose of protecting customers' residential homes.

Pl.'s Mem. Law, p. 6 (citing Resp., Ex. D, Essig Dep. at 31 ("So basically we were doing it to

protect the home.")).  Plaintiff therefore argues that the plain language of the UTPCPL, as seen

through a wide remedial lens, includes the use of shoe covers to protect consumers' homes as a

"household purpose."  Plaintiff notes that the shoe covers are available to the general public and

do not require special privileges, such as a license, in order to purchase them.  Plaintiff therefore

contends that the shoe covers fall within the plain language of the statute describing available

private actions because they were purchased primarily for a household purpose, i.e., protecting

the home.  Plaintiff also contends that any argument by Shu-Bee's that he cannot maintain a

cause of action under the UTPCPL because the shoe covers were not purchased for his own use

in his own home "puts 'form over substance,' an approach that has been rejected in the setting of

CPL claims." Pl.'s Mem. Law at 7 (citing Spiro v. Prudential Relocation, Inc., 2007 U.S. Dist.

LEXIS 14810, *32 (E.D. Pa. Mar. 1, 2007)).

Plaintiff distinguishes Balderston as inapplicable to this case because he contends

that Balderston addresses only the "personal purpose" qualification for standing because the

nature of surgical screws as medical devices in Balderston were meant for the inside of the

human body, not for "household purposes." Id. at 7. Plaintiff contends that there can be no

plausible claim that the shoe covers were not meant to be used in households since a customer

home is the setting for which Plaintiff's employer purchased the covers and in which Plaintiff

and his co-workers wore the covers. Id. Plaintiff further argues that the nature of the Balderston

surgical screws prevents their "personal use" by more than the one person who has the screw

implanted in his or her body, but shoe covers "and indeed most products that one could imagine

used for 'household purposes' -- may be used to protect homes (a household purpose) by a

number of different individuals in a number of different contexts." Id. at 8. Plaintiff further

argues that there is no need for the user of shoe covers to have a specific tie of ownership to the

house the shoe covers are protecting. Id. (citing Spiro).

In Spiro, plaintiff was a Department of Defense ("DOD") employee who agreed to

relocate to Japan and DOD, pursuant to plaintiff's employment contract, was required to obtain

property management services for plaintiff. DOD and the defendant property management

company contracted to provide relocation and property management services for plaintiff and

plaintiff separately contracted with defendant to lease her private residence, which tenants later

damaged. The District Court held that plaintiff was a purchaser under the UTPCPL because the

value of the property-management services contract was taxable income to her and to hold that

she was not a purchaser of the services "would allow form to tower over substance, as the funds

that were used to pay [d]efendant for its services were properly considered taxable income earned

by Ms. Spiro and merely passed to [d]efendant through Ms. Spiro's employer rather than from

her directly." 2007 U.S. Dist. LEXIS 14810, at *9. The court also held that the plaintiff's

reasonable reliance on the defendant's assurances was foreseeable because she had separately

contracted with defendant to provide services and was clearly the beneficiary and consumer of

the services provided pursuant to the property-management contracts. Id. at 9-10.

   Spiro, despite Plaintiff's claims, is distinguishable from the instant case. In this

case, Plaintiff's claims are based upon the purchase of shoe covers by Plaintiff's employer and

there was no commercial bargaining or exchange between Plaintiff and Shu-Bee's. Plaintiff did

not contract with another party to provide goods or services for his employer's benefit and

Plaintiff is not the third-party beneficiary of any contract entered into by his employer and its

customers. Consequently, Plaintiff is not acting in a representative capacity and may not

maintain a private action under the UTPCPL. See Country Classics at Morgan Hill

Homeowner's Assn., Inc. v. Country Classics at Morgan Hill, LLC, 780 F. Supp. 2d 367, 375-76

(E.D. Pa. Apr. 27, 2011)(Rufe, D.J.)(citations omitted). Further, although Plaintiff argues that

the shoe covers at issue were for household purposes, I conclude that the shoe covers were

purchased by Plaintiff's employer for a commercial purpose which happened to take place in a

residential setting, and the purchase of the shoe covers by Plaintiff's employer was not intended

primarily for Plaintiff's personal, family or household use. See Morales v. Superior Living

Prods., LLC, 2009 U.S. Dist. LEXIS 91578, *33-35 (E.D. Pa. Sept. 30, 2009). Thus, the

UTPCPL does not apply in this case and Shu-Bee's Motion must be granted as to Plaintiff's

UTPCPL claims in Count VII.

An appropriate Order follows.